RAMÓN PÉREZ CABRERA, Plaintiff and Appellant, *v.* RUBERT HNOS., INC., Defendant and Appellee.

No. 7894.    Argued February 20, 1940.—Decided April 30, 1940.

E. *Martínez Avilés* for appellant. *Jaime Sifre Jr.* and *Antonio J. Matta* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is a revendicatory action in which a parcel of land was claimed and in which judgment for defendant was entered.

The issue was stated in the complaint as follows: The plaintiff owns under a title recorded in the registry of property a 10-cuerda parcel of land lying in the Algarrobo barrio of the Municipality of Vega Baja and bounded: on the north and west by Heirs of Ramón Pérez Fernández, on the south by Insular road No. 2, and on the east by Heirs of Ramón B. Portela.

Five years ago the defendant seized that parcel on the ground that the plaintiff was in possession of another parcel of the same area belonging to the defendant.

The plaintiff is willing to deliver to the defendant such other parcel, provided the defendant deliver to him that which belongs to him, many efforts to that effect having been unsuccessfully made to get the defendant to agree.

The defendant moved to strike out from the complaint that part thereof beginning with the words "on the ground", and the court granted the motion because in its opinion such allegations were not proper in a revendicatory action. The plaintiff, of course, filed an amended complaint and confined his allegations to the statement that he was the owner of

the parcel described, which is at present and had been for five years in the possession of the defendant without any legal title thereto.

The defendant filed a demurrer which was overruled and then answered denying that the plaintiff owned the parcel sued on and stating further "that as a matter of fact said parcel does not exist nor has it ever existed." It denied to be in possession thereof or that it had refused to deliver the same.

It alleged, as new matter, that it owned in the Algarrobo barrio of Vega Baja a parcel of land containing about five or six cuerdas bounded: on the north by Rubert Hnos. Inc.; on the south by public road No. 2; on the east by Heirs of Portela before and now Rubert Hnos., Inc., and José Venegas, this boundary being bisected by a strip of land belonging to Heirs of Portela stretching from the highway to the railroad truck of the American Railroad Co. of Puerto Rico which divides the parcel into two portions; and on the west by F. Jiménez and the remainder of the main estate belonging to Mrs. Dolores Pérez, widow of Portela, from which estate it had been segregated;

That said parcel was a segregation from an estate of seventy-two cuerdas owned by Mrs. Pérez de Portela and was bought from her by public deed executed February 21, 1930, and recorded in the registry of property on July 17, 1930;

That Mrs. Dolores Pérez de Portela brought ownership title proceedings in which she claimed to be the owner of a ten-cuerda parcel—its description coincides with that of the parcel claimed in the suit—which the district court decided in her favor on January 20, 1930, the ownership title being recorded in the registry of property in favor of petitioner on October 17, 1930.

That under public deed dated February 27, 1930, Mrs. Dolores Pérez de Portela sold to plaintiff the remainder of the 72-cuerda estate described as a 15-cuerda parcel, and

also the 10-cuerda parcel the subject matter of the owner-ship title proceedings, and that the plaintiff recorded his title on October 17, 1930.

That such as it was described in the complaint the parcel claimed in the suit "coincides as regards the angle on its southeast boundary and its south and east boundaries with the southeast angle and the south and east boundaries of the 56.50-cuerda estate owned by the defendant."

On the above pleadings the case went to trial on March 20, 1938. The documentary evidence of the plaintiff consisted of a copy of the deed of sale executed on February 27, 1930, by Mrs. Dolores Pérez de Portela in regard to a 15-cuerda parcel of land and, moreover, another 10-cuerda parcel, both lying in the Algarrobo barrio of Vega Baja. The description in the deed of sale of the 10-cuerda parcel fails to mention the east boundary thereof. It also consisted of a copy of the order of January 20, 1930, made by the District Court of San Juan, granting the ownership of a 10-cuerda parcel located in the Algarrobo barrio of Vega Baja to Mrs. Dolores Pérez de Portela, with a notice of the recording thereof in the registry of property on October 17, 1930. The description of the parcel is the same as that of the parcel claimed in the complaint. And of two tax receipts regarding a 10-cuerda parcel located in the Algarrobo barrio of Vega Baja for the fiscal year 1937–1938.

The parol evidence consisted of the testimony of plaintiff himself. He said, briefly:

That he owned two parcels of land in the Algarrobo barrio of Vega Baja, containing 10 and 15 cuerdas respectively. The 10-cuerda parcel is detained by the defendant. It is bounded on the north and west by Heirs of Ramón Pérez Fernández, on the south and east by Heirs of Portela;

That the defendant bought 56 cuerdas from the Heirs of Pérez Fernández out of a 72-cuerda estate recorded in the registry. "In the above estate there is included a 10-cuerda parcel . . . . . which was unrecorded; my sister afterwards

brought dominion title proceedings in order to convey the same to me." The parcel claimed "is bounded on the south by that now owned by Rubert Hermanos, which is part of the 72-cuerda estate."

He tried to have it returned to him. He sent his title deeds to the defendant. He has met its agents personally. All to no avail.

The defendant has grazed its cattle on the parcel and has erected works thereon—a cockpit, an artesian well—which it pulled down afterwards. The witness has been paying the taxes for the last five or six years.

On cross-examination by counsel for the defendant he testified as follows:

"Attorney Matta:

"Q.—Don Ramón, how were you dispossessed of that by Rubert Hermanos?

"A.—They were given possession of the 56 cuerdas which they bought before I did. At the time of their purchase I had not yet taken possession of that land. When I went there I saw that my land, according to the deed—the deed was given me one year later, after one year. A sister of mine was involved and that deed was kept by attorney Fernández in his office.

"Q.—Who bought first?

"A.—Rubert Hermanos, I think.

"Q.—If I tell you that your deed is dated February 27, 1930, and that of Rubert Hermanos is dated February 21, could you tell the court who bought. . . . ?

"A.—Mine is dated February 27.

"Q.—Then Rubert Hermanos bought and occupied that estate before you bought. Subsequent to your purchase, have you at any time been ejected from your land?

"A.—Subsequent to their purchase I have not been ejected from my land

"Q.—Then you are at present in possession?

"A.—I have not been ejected, but that ten (10) cuerdas. (sic) When I got there Rubert Hermanos had already occupied the ten (10) cuerdas as part of the fifty-six (56) and one half cuerdas out of the seventy-two (72) cuerdas.

"

"Q.—Are you at present exactly occupying the same land delivered to you when you bought?

"A.—I am in possession of fifteen (15) and one half cuerdas; the remaining cuerdas are wild land.

"    .    .    .    .    .    .    .    .    .    .

"Q.—Is it or is it not a fact that Martínez Domínguez made to you a friendly proposition to the effect that if you showed him with your title deed that you were the owner of such land and had been dispossessed thereof by Rubert Hermanos, they would deliver the same to you and that you refused?

"A.—I had to sue them to compel them to deliver to me; they were never willing to settle with me amicably; I had to resort to the courts to be able to get that land.

"Attorney Matta: That is all."

The cross-examination proceeded:

"Attorney Martínez Avilés:

"Q.—(To the witness:) You say in answer to my colleague that you have never been ejected from that property, but have Rubert Hermanos let you reap any benefit out of that property?

"A.—No, they have not let me reap any benefit.

"Q.—Notwithstanding your having acquired the same by public deed?

"A.—Exactly.

"Attorney Martínez Avilés: That is all. . . . We rest."

The defendant filed a motion for nonsuit which was denied and then it introduced its evidence.

Rafael Martínez Domínguez, treasurer and general manager of the defendant corporation, took the stand and stated that he had seen the plats which were shown to him by his attorney to whom they had been delivered by Carlos García as the agent of the seller at the time of the purchase of the property. The plats were marked for identification;

That the plaintiff called on him, not at the time of the sale but years afterwards, and raised the question of the detention of the property; that he told him that he had no knowledge of the facts; that he should investigate the matter and bring him the proofs so that he might examine them, whereupon the plaintiff sent him a sketch on a small piece

of paper and some memoranda; that they checked the data and were unable to conclude that the plaintiff was right; That to his judgment, they were in possession of what was actually theirs.

Then the following happened:

"Attorney Matta: We are going to submit deed of sale No. 8, executed before notary Luis Toro Cabañas by Dolores Pérez de Portela to the corporation Rubert Hermanos.

"Attorney Martínez Avilés: What is it you propose to show?

"Attorney Matta: Our theory is that a double sale is here involved and we are going to show that we were first purchasers; that we have been in possession of the piece of real property bought; and that by reason of our having bought first and recorded the property first no action of revendication can prosper under such circumstances.

"Attorney Martínez Avilés: We object to the admission of the document, Your Honor, because under the notarial act, deeds shall be signed, sealed and paraphed by the notary who authenticates them and it appears from this certificate that the deed has not been sealed, an indispensable requisite.

"Attorney Matta: This is a copy.

"The court: Document admitted; let it be marked Defendant, Exhibit 1.

"Attorney Martínez: Respectfully, we take exception."

The parties who executed the deed were Dolores Pérez de Portela, on the one hand, and Rubert Hermanos, Inc., on the other.

The former testified that she was the owner of a 72-cuerda estate in the Algarrobo barrio of Vega Baja, bounded on the north by Tomás Prado, formerly, but now Rubert Hermanos; on the south by Ramón Pérez Fernández now Nicolás Pérez, and public road No. 2; on the east by R. Pérez Fernández, formerly, but now his heirs and José Venegas, this boundary being bisected by a strip of land of Heirs of Portela; and on the west by Francisco Jiménez.

She further testified that she agreed to sell to the other party a portion of the estate. The portion is described in the manner already stated when resuming the new matter

of the answer. The deal was carried out forthwith, the purchase price being nine thousand dollars. The deed of sale was recorded in the registry of property on July 31, 1930.

Thereupon the defendant submitted in evidence a certificate issued by the registrar of porperty of San Juan concerning the records of 72-cuerda estate for the purpose of showing that "the parcel claimed by the plaintiff is the remainder of a 72-cuerda parcel out of which the defendant had previously bought 56.60 cuerdas."

The plaintiff objected, "in the first place, because in such certificate several parcels are described and the same contains entries of attachment, mortgage; and this in case of an appeal would unnecessarily crowd the record. Also, because what the defendant is seeking is to show that the 56.60-cuerda parcel was recorded in its name. We fail to see the materiality of such paper."

The paper was admitted and the plaintiff took exception. One of the marginal entries on the record of the 72 cuerdas says: "There has been segregated a parcel with an area of 56.60 cuerdas sold to the corporation Rubert Hermanos . . . July 21, 1930." The sixth record, dated October 17, 1930, is that of the remainder of the 72-cuerda estate, that is, fifteen cuerdas which the widow of Portela sold to the plaintiff. The boundaries of the 15-cuerda parcel are as follows: on the north, the American Railroad Company's track which separates it from the parcel sold to Rubert Hermanos, Inc.; on the south, Insular road No. 2; on the east, land of the widow of Portela, and on the west, Francisco Jiménez. On the margin of the record an entry appears to the effect that the record of the other estate referred to in the deed—the 10-cuerda parcel—was entered on folio 231 of volume 20 of Vega Baja, estate No. 1318, first record.

Then comes the testimony of Celestino Castro, a civil engineer, who testified that about 1930 he was commissioned to go to the 56-cuerda estate bought by Rubert Herma-

nos in order to find out on the spot whether the land in the possession of the centrale was exactly the same as that described in the plat. He made a survey of it and noticed that all its points and angles coincided exactly with those of the plat.

His testimony proceeded as follows:

"Q.—(To the witness:) Now, if I told you that the plaintiff has testified that the boundaries of the parcel bought by him are as follows: On the north, Heirs of Ramón Pérez Fernández; on the south, Public road No. 2; on the east, Heirs of Ramón B. Portela, and on the west, Ramón Pérez Fernández. From the above boundaries of the parcel bought by Rubert Hermanos from Dolores Pérez de Portela, can you tell the court whether or not, according to said boundaries, the plaintiff's parcel coincides with the parcel bought by the defendant as far as the boundaries on the east and south are concerned?

". . . . . . . . . .

"A.—These boundaries just read out are exactly the same as those of the Central San Vicente's estate. Exactly the same.

"Q.—Have you at present examined that estate again?

"A.—I have.

"Q.—Is it or is it not the same land with its boundaries as that examined by you in 1930 and in the possession of Rubert Hermanos?

"A.—It is exactly the same. It is all fenced with barbed wire, there is barbed wire everywhere."

José Isaca, field supervisor of Central San Vicente, took the stand and testified that he remembered that at the time of the purchase of the 56 cuerdas, Rafael Martínez, Carlos García, who is the son-in-law and attorney in fact of the widow of Portela, and he, went on a tour of inspection of the parcel on a sunday. A few days afterwards he was called upon to receive delivery thereof by metes and bounds and right away he had the property fenced, this being the estate at present in the possession of defendant. While the fence was being set up, the plaintiff passed by and did not object. His claim to the ten cuerdas came later. This happened about two years ago.

The case was thus submitted for consideration and determination by the court which, as already stated, decided the same against the plaintiff. In its statement of the case and opinion the court makes reference to the pleadings and then to the evidence, dwelling on the testimony of the plaintiff which it interprets as follows:

"The plaintiff admits that the defendant acquired the fifty-six (56) and one half cuerdas, that are recorded, out of the seventy-two (72) cuerdas; and that he acquired the remaining fifteen (15) and one half cuerdas. This also appears from the registry. Both parcels make up the main estate in its entirety. He concedes that the parcel of Rubert Hermanos is part of the seventy-two (72) cuerda estate. He said however, that 'that 72-cuerda estate includes a parcel of ten cuerdas and a fraction which was unrecorded.'

"The plaintiff told us that the 10.16-cuerda parcel is included in the 72-cuerda parcel. He placed it, therefore, within the main estate. This can not be. If, as admitted by him, the defendant is in possession of a 56.50-cuerda parcel and the plaintiff himself is in possession of a 15.50-cuerda parcel, both parcels totaling 72 cuerdas, the 10-cuerda parcel can not physicially be included within the portion of the defendant. If such were the case, a double sale would then be involved, and in that case it appears that the defendant acquired and recorded its title before the plaintiff did and, therefore, section 1362 of the Civil Code, 1930 ed., is applicable in the premises. See *Abella* v. *Antuñano,* 14 P.R.R. 485; *Díaz* v. *Ramos,* 51 P.R.R. 798; 10 Manresa 175; 23 Scaevola 526.''

And closes:

"We do not think that on this evidence the complaint could be sustained. In revendicatory actions it devolves upon the plaintiff to prove his case. The maxim *Actore non probante, reus is absolvendi,* applies to him. See *Ledesma* v. *González,* 1 S.T.S. 420.''

Upon the entry of the judgment on April 26, 1938, the plaintiff moved for reconsideration on the ground that the court had attached to his testimony at the trial a materiality which it lacked. The court denied the motion by an order dated May 10, 1938, and the plaintiff took an appeal from the judgment on May 24, 1938.

On the 7th of June following the plaintiff filed in the district court a lengthy motion for a new trial, together with several affidavits and a statement of the case including the pleadings and the evidence. The grounds for his motion were three: 1, irregularity in the procedure pursued by the adverse party; 2, accident or surprise which could not be forestalled by ordinary prudence on the part of the plaintiff; and 3, insufficiency of the evidence to justify the judgment which was, moreover, contrary to law and the jurisprudence. On October 17, 1938, the motion was denied together with the motion to reconsider, and on the 24th of the same month the plaintiff took an appeal to this court.

Both appeals, that from the judgment and that from the denial of the motion for a new trial, have been prosecuted together.

The appellant assigns in his brief four errors committed as follows: weighing the evidence, dismissing the complaint, refusing reconsideration of its judgment, denying a motion for a new trial and a motion for reconsidering its order.

■■ May be the plaintiff is right. Perhaps the key to a determination of this case might be found in that part of the complaint that was stricken out. It appears, however, from a careful analysis of the pleadings and the evidence that he failed to show that the defendant was detaining land owned by him.

It was he who instituted the proceedings. It devolved upon him to prove his claim. The defendant alleged and showed that it was in possession of the parcel bought by it from the same person from whom the plaintiff derived title. It bought fifty-six cuerdas and it was put in possession of fifty-six cuerdas. It fenced them and has ever since been in possession thereof. Its actual boundaries coincide with those described in the title deed. Its answer to the complaint is clear and specific, and the new matter therein alleged is ample. It did not set up the juridical problem in such a way as to be considered as an irregularity that might

mislead the plaintiff and cause him to lose his case. Perhaps at the trial the skilful cross-examination of counsel for the defendant confounded the plaintiff. The latter, however, never explained himself with due clearness and he had plenty of opportunities to do so. On the contrary, his testimony lends itself to be weighed as the trial court did. And if the portion claimed by him was included in that previously sold by the same party to the defendant and recorded by the latter also previously, in good faith, in the registry, a double sale case undoubtedly arises favorable, under the law and the jurisprudence, to the defendant, to which reference was made by the district court, and surprise can not be successfully alleged by the plaintiff in the degree required by law and the jurisprudence for the granting of a new trial.

As regards the independent ownership title to the ten cuerdas which he alleged, the plaintiff confined himself to produce the final order of the district court in the ownership title proceeding had before it. He failed to produce the record itself which perhaps might have thrown any light. He failed to produce witnesses or experts who might have located the parcel in some place, by itself, apart from the 72-cuerda parcel of his predecessor in interest, which, according to the appellant, was sold by said predecessor in interest in two portions, one of fifty-six cuerdas to the defendant and another of fifteen cuerdas to plaintiff himself.

In short, we will say that, by themselves, the titles produced are not sufficient to warrant the entry of the judgment sought by the appellant. And if there is added to that the confusion created by the testimony of plaintiff himself at the trial, one can understand that no other judgment could have been rendered in the case than that entered by the lower court.

From the foregoing, as the plaintiff failed to show that the defendant was detaining the land claimed by him, the appeal must be dismissed and the judgment and order appealed from affirmed.